**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JIN MEI LIN** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| | : | |
| v. | : | **No. 11-6373** |
| | : | |
| **JANET NAPOLITANO, et al.** | : | |
| Respondents. | : | |

| | | |
|---|---|---|
| **XIAO LIN** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| | : | |
| v. | : | **No. 11-6374** |
| | : | |
| **JANET NAPOLITANO et al.,** | : | |
| Respondents. | : | |

**Goldberg, J.**                                                             **May 31, 2013**

<u>**MEMORANDUM OPINION**</u>

  Petitioners Jin Mei Lin and Xiao Lin are natives and citizens of China who entered the United States as lawful permanent residents pursuant to their stepparent/stepchild relationship with Tina Chu.  After their naturalization applications were denied by the Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), Petitioners filed Petitions for Review of Naturalization Denial in this Court.

  Presently before the Court are cross-motions for summary judgment, requesting that the Court determine whether Petitioners are entitled to naturalization as a matter of law.  For the reasons set forth below, the Government's motion for summary judgment will be granted and Petitioners' motion will be denied.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed:[1]

Jin Mei Lin and Xiao Lin are the children of Hai Rui Lin.  As the legitimacy of Hai Rui Lin's marriage to Tina Chu is the central issue in this case, we begin with facts relevant to that relationship.

In 1990, Hai Rui Lin entered the United States using a fraudulent passport.  While in the country, Lin resided in Philadelphia, New York City and Florida, but never in or near California where Chu had resided.  On December 27, 1996, Hai Rui Lin was deported back to China, and has not legally returned to the United States.  (Gov't's Statement of Undisputed Facts ¶¶ 3-6, Doc. No. 20.)

On February 2, 1999, Hai Rui Lin and Tina Chu married in China.  This marriage took place when Chu visited China from January 17, 1999 until February 3, 1999.  Chu returned to the United States the day after the marriage despite possessing a visa that would have allowed her to remain in China for an additional two weeks.  Chu is a naturalized United States citizen who has lived in California since at least 1989.   (Id. at ¶¶ 7, 9-11.)

On March 17, 1999, Chu filed I-130 Petitions for Alien Relative[2] on behalf of Hai Rui Lin, Jin Mei Lin and Xiao Lin.  In the I-130 petitions for Petitioners, Chu listed Jin Mei Lin and

_____

[1] We note that the Government has also represented as undisputed certain facts included in the declaration of USCIS Immigration Officer Peggy Lin Chang.  (See Gov't's Statement of Undisputed Facts ¶ 14.)  Petitioners contend that this declaration is improper and inadmissible as evidence.  (Pet'rs' Objection to Gov't's Cross-Mot. for Summ. J., Doc. No. 22-1.)  Resolution of this issue is unnecessary to the disposition of the instant motions.  Because we would rule in favor of the Government absent Chang's declaration, we need not, and will not, consider this evidence.

[2] The purpose of this form is for a citizen or lawful permanent resident of the United States to establish his or her relationship to certain alien relatives who wish to immigrate to the United States.  Form I-130, Petition for Alien Relative, U.S. CITIZENSHIP AND IMMIGRATION SERVS. (Mar. 26, 2013), http://www.uscis.gov/portal/site/uscis/ (search Form I-130).

Xiao Lin as her stepchildren. In May 2001, Petitioners applied to the American Consulate in China for immigrant visas and alien registrations. Their applications were approved by consular process, and on May 28, 2001, they entered the United States as lawful permanent residents ("LPRs"). (Id. at ¶¶ 15-17.)

In their immigrant visa and alien registration applications, Petitioners listed their final destination in the United States as Monterrey Park, California, to reside with their stepmother Tina Chu. Upon arrival, however, Petitioners lived with Chu in California for less than two weeks. In June 2001, Petitioners left California and relocated to Philadelphia to live with their paternal uncle. On November 11, 2002, Hai Rui Lin and Chu were divorced. (Id. at ¶¶ 18-21.)

On March 29, 2006, Petitioners filed N-400 Applications for Naturalization. On August 30, 2010, USCIS denied Petitioners' applications, finding that Petitioners wrongfully obtained their LPR status as a result of the sham marriage between their father and Chu. On September 24, 2010, Petitioners appealed that finding by filing N-336 Requests for Hearing. In support of their appeals, Petitioners submitted documentation supplied by their father, purporting to prove that his marriage to Chu was legitimate. This evidence included: phone bills from periods in 1999, 2000, 2001 and 2010, including Petitioners' cell phone bills and telephone bills from "TJ Driving School" in California; Chu's expired passport; plane tickets for Chu; and envelopes (without the contents) sent by Chu to Hai Rui Lin in China during April and May 1999. On June 10, 2011, USCIS denied Petitioners' appeals. USCIS concluded that the evidence submitted did not prove that the marriage between Chu and Hai Rui Lin was bona fide. (Id. at ¶¶ 22, 24-28.)

On October 8, 2011, Petitioners filed separate actions in this Court for de novo review of USCIS' denial of their naturalization applications. On November 29, 2011, we granted an unopposed motion to consolidate the actions. On July 13, 2012 and August 13, 2012, the parties

filed cross-motions for summary judgment. These motions are now ripe for disposition.

## II. STANDARD OF REVIEW

The denial of a naturalization application is reviewed <u>de novo</u> by the district court pursuant to 8 U.S.C. § 1421(c). Where there is no genuine issue of material fact, the court may dispose of the case by way of summary judgment. <u>See Chan v. Gantner</u>, 464 F.3d 289, 296 (2d Cir. 2006).

## III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. <u>Kaucher v. Cnty of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 248). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. <u>Galena v. Leone</u>, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. <u>Schaar v. Lehigh Valley Health Servs., Inc.</u>, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing <u>Williams v. Borough of W. Chester, Pa.</u>, 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial <u>Celotex</u> burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." <u>Id.</u> at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)(A). Only evidence which is admissible at trial may be considered in ruling on the motion. <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F. Supp. 474, 482 (D.N.J. 1995).

Where, as here, cross-motions for summary judgment have been filed, the summary judgment standard remains the same, and each motion should be considered separately. <u>Williams v. Phila. Hous. Auth.</u>, 834 F. Supp. 794, 797 (E.D. Pa. 1993), <u>aff'd</u> 27 F.2d 560 (3d Cir. 1994).

## IV. DISCUSSION

The requirements for naturalization are set forth at 8 U.S.C. § 1427. The burden is on the applicant "to show his eligibility for citizenship in every respect." <u>Berenyi v. Dist. Dir., INS</u>, 385 U.S. 630, 637 (1967). The applicant generally meets this burden if he shows by a preponderance of the evidence that he has satisfied all of the requirements to become a United States citizen. <u>See</u> 8 C.F.R. § 316.2(b). There must be strict compliance with all congressionally-imposed prerequisites before an applicant may acquire citizenship. <u>Fedorenko v. United States</u>, 449 U.S. 490, 506 (1981). Courts cannot use equitable legal doctrines to excuse

an applicant's failure to meet all of the statutory requirements for naturalization.   INS v. Pangilinan, 486 U.S. 875, 883-85 (1988).   Any doubts regarding eligibility "should be resolved in favor of the United States and against the [applicant]."   Berenyi, 385 U.S. at 637 (internal quotation marks omitted).

To be eligible for naturalization, an applicant must show, among other things, that he has been "lawfully admitted for permanent residence."   8 U.S.C. § 1427(a)(1); see also 8 C.F.R. § 316.2(a)(2).   Again, the burden of proof is on the applicant to demonstrate that he has satisfied this requirement.   8 U.S.C. § 1429.   The term "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."   8 U.S.C. § 1101(a)(20).   The United States Court of Appeals for the Third Circuit has held that, in order to satisfy this provision, an applicant must have been admitted in compliance with the substantive legal requirements—as opposed to merely the procedural requirements—of permanent residence.   Martinez v. Att'y Gen. of the U.S., 693 F.3d 408, 414 (3d Cir. 2012); see also Gallimore v. Att'y Gen. of the U.S., 619 F.3d 216, 224 (3d Cir. 2010). Therefore, an alien has not been "lawfully admitted for permanent residence" where he "obtained [his] permanent resident status by fraud, or had otherwise not been entitled to it."   Gallimore, 619 F.3d at 624 (citing In re Koloamtangi, 23 I. & N. Dec. 548, 550 (BIA 2003)).

Here, Petitioners received their LPR status on the basis that they were the stepchildren of Tina Chu.   A stepchild relationship must be based on a marriage that was at some point valid. See Matter of Awwal, 19 I. & N. Dec. 617, 621 (BIA 1988); see also Matter of Teng, 15 I. & N. Dec. 516, 519 (BIA 1975).   Even though a marriage may be given legal effect in the United States or abroad, USCIS "is not required to recognize it for the purpose of conferring

immigration benefits where the marriage was entered into for the purpose of evading the immigration laws." Matter of Phillis, 15 I. & N. Dec. 385, 386 (BIA 1975) (citing Lutwak v. United States, 344 U.S. 604 (1953); Johl v. United States, 370 F.2d 174 (9th Cir. 1966); Matter of M, 8 I. & N. Dec. 217 (BIA 1958)). Where there has never been a valid marriage—that is, the marriage was a sham—there cannot be a steprelationship under the immigration laws, notwithstanding that the stepchildren may be innocent of any fraudulent intent. Matter of Awwal, 19 I. & N. Dec. at 621 ("[A] marriage which is a sham from the outset cannot form the basis for a steprelationship under [8 U.S.C. § 1101(b)(1)(B)]."); Matter of Teng, 15 I. & N. Dec. at 519 (concluding the same despite the fact that the stepchildren may have been innocent of any fraudulent intent). The central inquiry in determining whether a marriage is valid is "whether the parties intended to establish a life together at the time of marriage." Malik v. Att'y Gen. of the U.S., 659 F.3d 253, 257 (3d Cir. 2011). Post-marriage conduct may also be relevant insofar as it reveals the parties' intent at the time they married. Id.

After careful consideration, we conclude that the Government is entitled to judgment as a matter of law. Viewing the undisputed facts in a light most favorable to Petitioners, it is clear that Hai Rui Lin and Tina Chu did not intend to establish a life together, and therefore Jin Mei Lin and Xiao Lin cannot demonstrate their eligibility for naturalization.

Although marital relationships vary and there is no set list of what evidence will suffice to show a bona fide marriage, the undisputed facts of record simply do not demonstrate a legitimate marriage between Hai Rui Lin and Chu. Essentially, the only evidence of record in support of a valid marriage is the marriage certificate itself. Petitioners have not provided any other relevant evidence to show that their father and Chu intended to establish a life together. There is no evidence that Hai Rui Lin and Chu had any significant contact, such as a pre-existing

relationship, prior to their marriage, or that Hai Rui Lin ever travelled to California to visit Chu. The record is also devoid of any facts establishing that Hai Rui Lin and Chu ever resided together in the United States or China, outside of possibly the eighteen-day period in early 1999 when Chu was in China. Further, there is no evidence of joint property or of significant contact during the marriage. In fact, the only concrete evidence of any communication between Hai Rui Lin and Chu during the marriage is a few empty envelopes sent by Chu to Hai Rui Lin during April and May 1999. Without examining the contents of the envelopes, we cannot conclude that such communications are evidence of a valid marital relationship. Finally, we note that Petitioners represented in their immigrant visa and alien registration applications that they intended to live with Chu in California, but actually only lived with her for less than two weeks before moving across the country to Philadelphia. While these facts are not in and of themselves dispositive, they do create a further inference that Chu did not intend to establish a life with Hai Rui Lin and, in turn, his children.

In their motion and briefs, Petitioners do not dispute or attempt to rebut the evidence of record, but instead raise other arguments to support their position. First, Petitioners effectively contend that their admission as LPRs is sufficient to satisfy the statutory requirements for naturalization, without regard to whether such admission was in compliance with the substantive legal requirements of becoming an LPR. (See Pet'rs' Mot. for Summ. J. 16, Doc. No. 17.) This argument is contrary to clearly defined law, and does not warrant judgment in Petitioners' favor. See Martinez v. Att'y Gen. of the U.S., 693 F.3d 408, 414 (3d Cir. 2012).

Petitioners also attempt to obtain summary judgment by arguing, in essence, that the Government is time-barred from questioning the legality of their admission. Petitioners assert that the Third Circuit's holdings in Garcia v. Att'y Gen. of the U.S., 553 F.3d 724 (3d Cir. 2009),

and Bamidele v. INS, 99 F.3d 557 (3d Cir. 1996), impose a statute of limitations on the Government where it seeks to "hold an alien responsible for an alleged fraudulent admission to the United States." (Lin's Mot. for Summ. J. 9, Doc. No. 17.)

In Garcia and Bamidele, the Third Circuit examined the statute of limitations set forth in 8 U.S.C. § 1256(a). The import of these cases is that the five-year limitation in § 1256(a) applies to rescission and removal proceedings based on a fraudulent adjustment of status. See Garcia, 553 F.3d at 726-28; Bamidele, 99 F.3d at 563; see also Malik v. Att'y Gen. of the U.S., 659 F.3d 253, 256-57 (3d Cir. 2011) (distinguishing Garcia and Bamidele from cases in which the alien obtained his LPR status by receiving an immigrant visa through the consular process, as opposed to through an adjustment of status while physically present in the United States). Here, Petitioners argue that Garcia and Bamidele counsel that the limitations period in § 1256(a) necessarily extends beyond the rescission and removal context, and renders their LPR status valid for purposes of naturalization. We disagree.

Even assuming § 1256(a) applies to bar removal proceedings against Petitioners,[3] the plain language of the statute does not in any way contemplate extension of the limitations period to the naturalization process, and the holdings of Garcia and Bamidele do not suggest otherwise. Further, Petitioners' interpretation of these cases does not comport with congressional intent. Rescission and removal proceedings are distinct and separate matters from an alien's eligibility to naturalize. Congress' desire to afford noncitizen LPRs with "the security which ought to attend [such] status," Bamidele, 99 F.3d at 564, does not mean that aliens who are later

_____

[3] We note that the Government concedes that USCIS cannot rescind Petitioners' LPR status. However, the Government argues that this is not because of the statute of limitations in § 1256(a), but because Petitioners did not obtain their LPR status by way of adjustment of status. (See Gov't's Cross-Mot. for Summ. J. 19 n.3.)

determined to have been ineligible for LPR status are entitled to the additional, greater benefit of citizenship. See Adegoke v. Fitzgerald, 784 F. Supp. 2d 538, 541-42 (E.D. Pa. 2011) (noting that the petitioner already enjoyed the limited security conferred by § 1256(a) and that "Congressional intent does not require that [he] be naturalized as well.")

Lastly, Petitioners raise several equity-based arguments. Among other things, Petitioners posit that the Government's failure to promptly review their status is fundamentally unfair and has placed an unreasonable burden on them to maintain evidence "to prove a bona fide marital relationship in perpetuity." They contend that this unreasonableness is compounded by the fact that the Government never conducted a review of the petition filed on behalf of Hai Rui Lin, and at some point lost this file.[4] Petitioners further assert that this case has taken an emotional toll on them.[5] (Pet'r's Mot. for Summ. J. 9-10, 11, 14.)

---

[4] Petitioners also assert that the Government's delay was caused by USCIS' Philadelphia Field Office's disregard of established regulatory criteria and procedures in handling Petitioners' cases. Specifically, Petitioners contend that the Philadelphia Field Office uses a process known as "Extended Review" when administering petitions identified as suspicious rather than complying with the procedures set forth in 8 C.F.R. § 103.2(b)(18). Petitioners argue that "Extended Review" is unfair and counsels in favor of imposing on the Government a limitations period to challenge fraud in an alien's admission. (Pet'rs' Mot. for Summ. J. 13-15.)

[5] Petitioners also make much of the fact that they did not obtain multiple levels of administrative review and that there is no evidence that they were aware of, or participated in, any fraud. (See Pet'r's Resp. 2, 4.) These arguments are without merit. First, because our review is de novo, the extent of appellate review provided by USCIS is irrelevant to our independent determination of whether Petitioners are eligible for naturalization. Second, the Third Circuit has stated that an alien cannot demonstrate that he is a lawful permanent resident where he obtained that status "by fraud, or had otherwise not been entitled to it." Gallimore, 619 F.3d at 624 (citing In re Koloamtangi, 23 I. & N. Dec. 548, 550 (BIA 2003) (emphasis added)). The use of the disjunctive clearly indicates that fraud is not the only basis for determining that an applicant was not lawfully admitted into the United States. See also Ajuz, 2009 WL 902369, at *6-7 (finding that the petitioner did not intend to deceive the immigration officer when he falsely indicated he was not married, but that he nevertheless was ineligible for naturalization as his basis for obtaining LPR status—that is, being an unmarried child of a lawfully permanent resident—was not true at all relevant times).

As previously discussed, courts cannot use equitable doctrines to excuse an applicant's failure to meet all of the statutory requirements for naturalization.  <u>See</u> <u>INS v. Pangilinan</u>, 486 U.S. 875, 883-85 (1988).  Because Petitioners' arguments do not alter the fact that they have not proven their eligibility to naturalize, their equitable assertions are irrelevant.  Although we sympathize with the situation confronting Petitioners, we are constrained to follow the law as written and interpreted by the Third Circuit.

**V.     CONCLUSION**

For the foregoing reasons, Petitioners' motion will be denied and the Government's motion will be granted.

An appropriate Order follows.[6]

---

[6] We note that Petitioners have also raised in their petitions a claim for violation of the Administrative Procedures Act ("APA").  Petitioners did not expressly raise this claim in their motion for summary judgment, and neither party briefed the issue.  Consequently, Petitioners shall advise the Court of whether they wish to proceed on their APA claim on or before June 14, 2013.